U.S. DISTRICT COURT E.D.N.Y

12/22/10 FILED

BROOKLYN OFFICE

LAW OFFICE OF FELIX Q. VINLUAN
Felix Q. Vinluan (FV6788)
450 Seventh Avenue, Suite 931
New York, NY 10123
Tel. No. 212-643-2692
Fax No. 212-643-3494
*Attorneys for the Plaintiff*

**SUMMONS ISSUED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JACQUELINE L. AGUIRRE,

                 *Plaintiff,*

  - against -

BEST CARE AGENCY, INC.,
DOROTHY DE CASTRO and
PERLITA JORDAN,

            *Defendants.*

**CV 10 - 5914**

CV No. _____

COMPLAINT

Trial by Jury Demanded

**BIANCO, J.**

-------------------------------------------------------------------X

**Plaintiff** JACQUELINE L. AGUIRRE, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.    This action arises out of Defendants' scheme to defraud Plaintiff through false representations during the employment and immigration sponsorship processes, and which scheme resulted in the labor trafficking and wage exploitation of the Plaintiff by Defendants.

2.    Defendants' scheme to defraud Plaintiff violates the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1589 and sec. 1590 in that the labor and/or

①

services of Plaintiff were knowingly obtained by Defendants by means of a scheme or plan to cause Plaintiff to believe that if she did not perform such labor or services, she would suffer serious harm.

3. To induce the Plaintiff to continue working for Defendants, Defendants falsely told her, among other things, that she would certainly receive the approval of her green card application as her petitioner, Defendant Best Care Agency, Inc., allegedly had the financial capability to sponsor her through the immigration process.

4. In reliance upon these and other misrepresentations, Plaintiff agreed to be sponsored by and to continue working for Defendant Best Care Agency, Inc. for the position of an Accounting Consultant.

5. Defendants knowingly presented immigration petitions containing false statements as to the true nature of employment of the Plaintiff as well as the Plaintiff's compensation rates to the Legacy INS (Immigration and Naturalization Service) and to its successor, USCIS (US Citizenship and Immigration Services).

6. Defendants knew at the outset that Plaintiff would not be employed by them in accordance with their immigration sponsorship attestations. They knew that they would not employ her as an Accounting Consultant, and they knew that they would not compensate her in accordance with their attestations or promises to the Department of Labor and to the Legacy INS (Immigration and Naturalization Service).

7. After the Legacy INS approved Defendants' initial H-1B nonimmigrant petition on behalf of the Plaintiff, Defendants advanced their scheme of defrauding the Plaintiff by enticing her with a green card sponsorship so that she would remain in their

employ, and by continuously reiterating to her that Defendant Best Care had the financial capability to sponsor her and to secure the approval of her green card sponsorship.

8. Even while they continuously represented to Plaintiff that Defendant Best Care had the financial capability to sponsor her, Defendants knew that Defendant Best Care was not earning sufficient net income to cover for Plaintiff's offered wage rate and did not have the financial capability to pay Plaintiff's offered wage.

9. Plaintiff relied upon Defendants' representations and continued to work for Defendants.

10. As a consequence of Defendants' unlawful conduct of submitting fraudulent immigration petitions, and of Plaintiffs' detrimental reliance on Defendants' misrepresentations, Plaintiff did not receive the lawful wages and benefits she would have received had Defendants really meant to comply with their attestations or promises. Worse, Defendants' green card sponsorship on behalf of the Plaintiff had been denied because of Defendant Best Care's lack of financial capability, and Plaintiff had found herself, not only without any employment, but also being subjected to removal (deportation) proceedings.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 18 U.S.C. 1595 and 28 U.S.C. 1331 (federal question). Supplemental jurisdiction over Plaintiff's common law claims is conferred by 28 U.S.C. 1367(a).

12. Upon information and belief, the Defendants are residents of the state of New York and are subject to personal jurisdiction in New York.

13.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S. 2201 and 2201.

14.    Venue is proper in this District under 28 U.S.C. 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, and Plaintiff was employed by Defendants in this district.

## PARTIES

15.    Plaintiff Jacqueline L. Aguirre ("Plaintiff") is an adult individual presently residing in Queens County, New York. A national of the Philippines, Plaintiff possesses a bachelor's degree in Accountancy, and several years of accounting work experience.

16.    Upon information and belief, Defendant Best Care Agency, Inc. ("Best Care") is a corporation duly organized and existing under New York laws.  Likewise upon information and belief, it is engaged in the business of providing supplemental healthcare staffing services, principally to the nursing home industry.  It maintains its principal executive office at 249-12 Jericho Turnpike, Suite 104, Floral Park, Nassau County, in the state of New York.

17.    Defendant Dorothy De Castro ("De Castro") is an adult individual residing in Nassau County, New York, and upon information and belief, is a principal officer (President) and shareholder of Defendant Best Care.

18.    Defendant Perlita Jordan ("Jordan") is an adult individual residing in Queens County, New York, and upon information and belief, is a principal officer (Chief Financial Officer) and shareholder of Defendant Best Care.

19.    Upon information and belief, at all relevant times, Defendants De Castro and Jordan had the power to hire and fire employees of Defendant Best Care, including

4

Plaintiff, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

20.     Upon information and belief, Defendants De Castro and Jordan had power over personnel decisions and payroll decisions at Defendant Best Care.

21.     Upon information and belief, Defendants De Castro and Jordan have taken active roles in the management of Defendant Best Care.

22.     Upon information and belief, Defendants De Castro and Jordan have been agents of Defendant Best Care.

23      Upon information and belief, Defendants De Castro and Jordan had also had the power to stop any illegal employment practices that harmed Plaintiff, and that at all times relevant, had employed Plaintiff.

## FACTUAL BASIS FOR CLAIMS

24.     Sometime in the fall of 2000, Plaintiff, who was a visiting tourist at that time, was actively seeking employment that would likewise offer her H1B nonimmigrant status sponsorship.

25.     Upon information and belief, Defendants De Castro and Jordan had agreed to offer employment and immigration sponsorship to the Plaintiff for the purpose of the latter helping them in the day-to-day operations of Defendant Best Care, more specifically, on the accounting side of Best Care's business operations.

26.     Defendants De Castro and Jordan knew that for the Plaintiff to legally work for them and for Defendant Best Care, Defendants had to sponsor her as an H1B nonimmigrant worker.

5

27.     Defendants De Castro and Jordan knew that for their H1B nonimmigrant petition on behalf of the Plaintiff to be approved by the Legacy INS, they had to offer Plaintiff a specialty occupation position requiring at least a bachelor's degree that Plaintiff possessed, and that they had to offer Plaintiff a wage rate that was certified by the U.S. Department of Labor.

28.     Sometime in the early part of February 2001, Defendants, represented by Defendant De Castro, retained the legal services of the Law Office of Neil A. Weinrib & Associates to prepare the H1B sponsorship petition on behalf of the Plaintiff.

29.     On February 5, 2001, Defendant De Castro signed the labor condition application (Form ETA 9035) whereby Defendants promised the U.S. Department of Labor that they would pay their beneficiary for the position of Accounting Consultant an hourly rate of at least nineteen dollars ($19.00).

30.     On the same day, Defendants, through Defendant De Castro, signed the petition for nonimmigrant worker (Form I-129) whereby they certified to Legacy INS that they were offering Plaintiff the position of Accounting Consultant at an annualized salary of eighteen thousand seven hundred dollars ($18,700) for eighteen hours of work per week.

31.     In April 2001, Legacy INS approved Defendants' H1B petition on behalf of the Plaintiff with a validity period from April 26, 2001 to March 15, 2004.

32.     After the H1B approval, Defendants required Plaintiff to perform, not only accounting-related responsibilities, but mostly other office-related operational responsibilities in connection with Defendants' staffing business.   In fact, Plaintiff became a one-woman office staff of the Defendants.

33.     Knowing that Plaintiff would become unlawfully present in the United States if they withdrew the H1B petition, Defendants took advantage of their having sponsored Plaintiff by paying her less than what they promised the U.S. Department of Labor and Legacy INS. Defendants initially paid Plaintiff eight dollars ($8.00) an hour, and even required her to work on a full-time basis at forty hours per week.

34.     Sometime in August 2001, Defendants represented to Plaintiff that they would likewise sponsor her green card petition if she would agree to work for them until two years after the green card application was approved. Defendants promised Plaintiff that Best Care had the financial capability to sponsor her green card petition, but that they would pay her the prevailing wage rate when she received her green card approval.

35.     Fearing that she would become unlawfully present in the United States if Defendants withdrew their H1B petition on her behalf, Plaintiff hesitatingly agreed to Defendants' proposals, and continued to work for Defendants at a much lesser compensation rate than required by law.

36.     On or about August 22, 2001, Defendants submitted to the U.S. Department of Labor their application for alien employment certification (Form ETA 750 Parts A and B) on behalf of the Plaintiff. This alien employment certification application was the first step of Plaintiff's green card process.

37.     Sometime in March 2004, before Plaintiff's H1B nonimmigrant status would expire, Defendants, through Defendant De Castro, signed the H1B extension petition documents prepared by the Law Office of Neil Weinrib & Associates on behalf of the Plaintiff, and submitted these documents to the USCIS.

38.     Defendants certified to the USCIS that they were extending Plaintiff's nonimmigrant working status as they needed her services as an Accounting Consultant. They likewise promised the USCIS that they were going to pay Plaintiff a salary of four hundred dollars ($400.00) for a 20-hour workweek.

39.     In June 2004, the USCIS approved Defendants' H1B extension petition on behalf of the Plaintiff with a validity period from April 2004 to March 15, 2007.

40.     Sometime in June 2006, the U.S. Department of Labor required Defendant Best Care to notify the Labor Department if it was still interested in continuing the processing of Plaintiff's alien certification application.

41.     Sometime in the same month, Defendants De Castro and Jordan discussed with the Plaintiff that they could withdraw their alien certification application as well as their H1B sponsorship on behalf of the Plaintiff if they did not receive Plaintiff's assurance that she would continue working for them until two years after she received her green card approval.

42.     During that discussion, Plaintiff inquired from Defendants De Castro and Jordan if Defendant Best Care really had the financial capability to pay her the offered wage until the approval of her green card application, as Plaintiff reminded them that Defendants were not paying her the prevailing wage rates pursuant to the attestations and promises they submitted to the Labor Department and to the Legacy INS / USCIS.

43.     Defendant Jordan replied: "You know, our company earned around one million last year.  And we have been earning more than a million for several years now. Of course, Best Care has the financial capability to sponsor your green card application".

44.    Defendant De Castro added: "There is no reason for you to worry. We have sponsored you for your H1B status, and we will extend your status again next year. You will eventually be paid the offered wage when you get your green card approved. And that will definitely happen because we have the financial capability to pay your wages. We just want you to assure us that you would continue working for us for two more years after you get your green card approved. Otherwise, if you cannot assure us, we will just withdraw your green card application. And perhaps even your H1B status."

45.    Because of, among others, Defendants' representations that Defendant Best Care had financial capability and that she would be paid the offered wage when she eventually received her green card, Plaintiff assured Defendants that she would work for them until two years after she received her green card approval.

46.    Upon information and belief, Defendants thereafter notified the U.S. Department of Labor that they were interested in continuing the alien certification application on behalf of the Plaintiff.

47.    On or about February 27, 2007, Defendants, again through Defendant De Castro, signed a third H1B petition to extend the nonimmigrant status of the Plaintiff. They certified to the U.S. Department of Labor and to the USCIS that they would pay their beneficiary (Plaintiff) at least the prevailing wage rate, which was twenty two dollars and fifty seven cents ($22.57) at that time.

48.    In April 2007, the USCIS approved Defendants' H1B extension petition on behalf of the Plaintiff, with a validity period from March 2007 to April 25, 2008.

49.    On or about July 19, 2007, the U.S. Department of Labor approved Defendant Best Care's alien certification application on behalf of the Plaintiff for the

position of Accounting Consultant and at the offered wage rate of twenty nine dollars and twenty six cents ($29.26) per hour.

50. Defendants, sometime in early August 2007, advised Plaintiff that their labor alien certification application in her behalf had been approved. They advised Plaintiff that she could proceed with the second step of her green card process, which was the filing of a petition for an immigrant worker with the U.S. Citizenship and Immigration Services (USCIS).

51. During this meeting, Plaintiff complained that she needed to be paid at least the prevailing wage rate in accordance with the H1B documents. Plaintiff again raised the issue about her low pay ($10.00/hour at that time in August 2007), which was clearly less than the prevailing wage rate ($22.57).

52. Plaintiff even suggested to Defendants De Castro and Jordan that she was contemplating of seeking other employers who would be willing to sponsor her H1B petition and likewise pay her the prevailing wage rate.

53. Defendant De Castro replied that even if Plaintiff could find another employer to sponsor her H1B petition, the petition would definitely be denied as she had already been on H1B status for more than six years, the maximum number of years an alien can be on H1B status, not unless the alien had an approved or pending labor certification application for at least one year.

54. Defendants knew that if Plaintiff would leave their employment, she would more likely become unlawfully present.

55. Defendants De Castro and Jordan reassured Plaintiff that she would have to wait until her green card application was approved to be paid the offered wage. They

further reassured her that she would certainly get her green card application approved as her petitioner (Defendant Best Care) had the financial capability to pay her the offered wage.

56.     Relying upon Defendants' representations, Plaintiff notified the Law Office of Neil Weinrib & Associates to proceed in preparing the immigrant petition to be signed and submitted by Defendant Best Care in her behalf.  This immigrant petition was the second step of the green card process.

57.     Likewise relying upon Defendants' representations, Plaintiff acquiesced begrudgingly to receive actual wages that were far below the prevailing wage rates for her offered position.

58.     On or about August 15, 2007, Defendants submitted Best Care's petition for immigrant worker (Form I-140) on behalf of the Plaintiff to the USCIS.

59.     Plaintiff likewise filed her Application for Adjustment of Status to permanent residence (Form I-485) before the USCIS.

60.     Sometime on or about February 25, 2009, the USCIS sent Defendant Best Care a request to submit additional evidence to show its ability to pay the Plaintiff's offered wage.

61.     Upon information and belief, Defendants submitted to the USCIS in compliance with its request several financial documents, including Best Care's federal income tax returns and corporate bank statements.

62.     On April 14, 2009, the USCIS denied Best Care's immigrant petition on behalf of the Plaintiff on the ground that it did not have the financial capability to pay the offered wage from 2001 to the time of the decision (2009).

63.     The USCIS denial order clearly found that Defendant Best Care incurred net losses of $155,306 and $528 for the years 2006 and 2007, respectively, which were the years when Defendants De Castro and Jordan represented to Plaintiff on several occasions that their company, Defendant Best Care, had the financial capability to pay her wages and to sponsor her green card application.

64.     Upon information and belief, Defendants De Castro and Jordan notified their immigration lawyers, the Law Office of Neil Weinrib & Associates, that they were not going to file an appeal from the USCIS decision finding Best Care not having financial capability to pay Plaintiff's offered wage.

65.     As a consequence of the denial of Best Care's immigrant petition on behalf of the Plaintiff, the adjustment application of Plaintiff was likewise denied by the USCIS on May 28, 2009.  This meant that Plaintiff had become unlawfully present in the United States.

66.     Plaintiff left Defendants' employment on or about July 6, 2009.

67.     The U.S. Department of Homeland Security thereafter served Plaintiff a Notice to Appear (NTA), effectively putting her under removal (deportation) proceedings.

68.     During the entire time that Plaintiff worked for Defendants, she was forced under the circumstances to work for Defendants and to receive compensation that was much less than the prevailing wage rates.

69.     Plaintiff was kept in silence, fear and obedience through Defendants' constant veiled threats and intimidation that she might be deported if she would be

discovered to be unlawfully present, and/or if she revealed to government authorities her mistreatment at the hands of her employers.

## FIRST CAUSE OF ACTION

### Trafficking Victims Protection Reauthorization Act, Forced Labor
### (18 U.S.C. sec. 1589, 1595)

70.     Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.     Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1595.

72.     The "Forced Labor" provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1589, establishes that "whoever knowingly provides or obtains the labor or services of a person ---- ....... (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; .... shall be fined or imprisoned not more than 20 years, or both".

73.     Defendants knowingly obtained Plaintiff's services by means of a scheme, plan or pattern intended to cause Plaintiff to believe that if she did not perform such labor and/or services, Plaintiff would suffer serious harm.

74.     Defendants knowingly benefited financially from participation in the venture that engaged in the obtainment of Plaintiff's labor and/or services by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that if she did not perform such labor and/or services, Plaintiff would suffer serious harm.  Defendants knew or

recklessly disregarded that said venture engaging in the obtaining of labor or services was by such stated means, in violation of 18 U.S.C. 1589.

75.     Defendants used fraudulent misrepresentations, veiled threats and intimidation to hold Plaintiff in their employment and forced her to work without paying her the compensation required by law.

76.     Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. 1589.

77.     As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial, but which amount is believed to be no less than one million dollars.

78.     Pursuant to 18 U.S.C. 1595, Plaintiff is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

## SECOND CAUSE OF ACTION

### Trafficking Victims Protection Reauthorization Act,
### Trafficking into Involuntary Servitude or Forced Labor
### (18 U.S.C. 1590, 1595)

79.     Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.     Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1595.

81.     The "Trafficking into Servitude" provision of the TVPRA, 18 U.S.C. 1590 provides that recruiting, harboring, providing or obtaining by any means any person for

14

labor or services in violation of laws prohibiting slavery, involuntary servitude, debt bondage or forced labor shall subject Defendants to fines.

82. As set forth herein, Defendants knowingly recruited, harbored, and obtained by fraudulent means, veiled threats and intimidation Plaintiff to provide labor and services to them in violation of 18 U.S.C. 1590.

83. Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. 1590.

84. As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial, but which amount is believed to be no less than one million dollars.

85. Pursuant to 18 U.S.C. 1595, Plaintiff is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

## THIRD CAUSE OF ACTION

### Fraudulent Inducement

86. Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87. Defendants knowingly made continuing misrepresentations and material omissions of fact, which were false to Plaintiff regarding the (a) nature of their immigration sponsorship, (b) Plaintiff's employment, work responsibilities and compensation to the effect that she would be paid in accordance with laws of the United States, as well as the (c) financial state of Defendant Best Care in relation to its immigration sponsorship of the Plaintiff.

88.     The representations and substantive omissions by Defendants, as alleged herein, including the nature and compensation rate of the Plaintiff as well as the financial condition of Defendant Best Care, were material and untrue.

89.     Defendants made or caused to be made the material misrepresentations and omissions identified above with knowledge or belief of their falsity or with reckless disregard for their truth.

90.     Defendants made or caused to be made the material misrepresentations and omissions with the intent to induce the Plaintiff to rely upon them so she would continue to work for Defendants at a compensation rate much less than required by law.

91.     Defendants concealed the material facts as to the true financial condition of Defendant Best Care to Plaintiff's detriment.

92.     Defendants' concealment obstructed Plaintiff from discovering that Defendant Best Care had been operating at net losses for years 2003, 2006 and 2007, and did not have sufficient net income to cover Plaintiff's offered wage for the years 2002, 2004 and 2005, creating the belief unto the Plaintiff that Defendant Best Care had the financial capability to sponsor her as an immigrant worker through the immigration process.

93.     In justifiable reliance on the material misrepresentations and omissions made or caused to be made by Defendants, Plaintiff continued to work for Defendants even at a less than the prevailing wage rate for her offered position.

94.     Had Plaintiff known of the material misrepresentations and omissions made or caused to be made by Defendants, Plaintiff never would have allowed herself to

be sponsored by Defendants through the immigration process and would have stopped working for Defendants.

95.     Because of Defendants' abuse of their position of trust as Plaintiff's immigration sponsor, Plaintiff, even in the exercise of reasonable due diligence, was ignorant of the true facts concerning the financial condition of Defendant Best Care, and believed that Defendants were conducting themselves honestly and properly with her. Plaintiff accordingly relied upon Defendants' conduct, and acted in such reliance as described above, all to her injury.

96.     Defendants' behavior constitutes an intentional fraud.

97.     As a direct and proximate result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at trial, but which amount is believed to be no less than one million dollars.

98.     The foregoing acts and omissions by Defendants constitute oppressive, malicious, and deceptive conduct justifying an award to Plaintiff of punitive and exemplary damages, attorney's fees and costs.

### **FOURTH CAUSE OF ACTION**

#### **Negligent Misrepresentation**

99.     Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 98 of this Complaint as though fully set forth herein.

100.    Defendants, and each of them, being not only the employer of, but the immigration sponsor of the Plaintiff, had a duty to give correct information to the Plaintiff.

101.   Defendants made false representations to Plaintiff, as stated above, that each of them knew or should have known was incorrect.

102.   Defendants knew that the information supplied in their representations, particularly with regard to the terms and conditions of Plaintiff's employment, and more specially, with regard to the financial condition of Defendant Best Care, was desired by the Plaintiff for the serious purpose of her maintaining her nonimmigrant status and obtaining her permanent residence in the United States.

103.   Plaintiff intended to rely and act upon the information supplied in Defendants' representations.

104.   Plaintiff reasonably relied upon Defendants' misrepresentations, to her detriment.

105.   As a direct and proximate result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at trial, but which amount is believed to be no less than one million dollars.

## FIFTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

106.   Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 105 of this Complaint as though fully set forth herein.

107.   Defendants, and each of them, knew or reasonably should have known that the conduct described herein would and did proximately result in physical and emotional distress to Plaintiff.

108.   At all relevant times, all Defendants, and each of them, had the power, ability, authority, and duty to stop engaging in conduct described herein, and/or to intervene to prevent or prohibit said conduct.

109.   Despite said knowledge, power and duty, Defendants negligently failed to act so as to stop engaging in the conduct described herein and/or to prevent or prohibit said conduct or otherwise protect Plaintiff.

110.   To the extent that said negligent conduct was perpetrated by certain Defendants, the remaining Defendants confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and with a wanton and reckless disregard for the deleterious consequences to Plaintiff.

111.   As a proximate result of said conduct, Plaintiff has suffered and continues to suffer mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, all to her damage in amounts to be proven at trial, but which amount is believed to be no less than one million dollars.

## SIXTH CAUSE OF ACTION

### Quantum Meruit

112.   Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 111 of this Complaint as though fully set forth herein.

113.   Defendants obtained and received the services of Plaintiff but did not fully compensate Plaintiff for the value of these services.

114.   Defendants' receipt of Plaintiff's services entitles Plaintiff to the quantum meruit of her services, attorney's fees, and costs, declaratory relief, and other equitable relief this Court deems appropriate.

### SEVENTH CAUSE OF ACTION

#### Unjust Enrichment

115.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 114 of this Complaint as though fully set forth herein.

116.    Defendants have been unjustly enriched by obtaining benefits from the labor or services of Plaintiff without adequately compensating Plaintiff for these benefits.

117.    Defendants' unjust enrichment at the expense of Plaintiff entitles Plaintiff to compensatory damages, attorney's fees and costs, declaratory relief, and other equitable relief this Court deems appropriate.

### EIGHTH CAUSE OF ACTION

#### Conspiracy

118.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 117 of this Complaint as though fully set forth herein.

119.    Defendants agreed to intentionally perform illegal acts in order to deprive Plaintiff of her legal rights.

120.    Defendants' intentional actions constitute conspiracy.

121.    Plaintiff is entitled to compensatory and punitive damages to be determined, attorneys' fees, and costs.

### JURY DEMAND

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants:

A.    Declaring that Defendants have violated 18 U.S.C. 1589 and 1590 and ordering Defendants, jointly and severally, to pay Plaintiff compensatory and punitive damages and attorney's fees;

B.    Declaring that Defendants have committed fraudulent inducement and negligent misrepresentation as set forth in the Third and Fourth Causes of Action, and ordering Defendants, jointly and severally, to pay Plaintiff her actual damages, exemplary and punitive damages, and reasonable attorney's fees;

C.    Declaring that Defendants have committed negligent infliction of emotional distress as set forth in the Fifth Cause of Action, and ordering Defendants, jointly and severally, to pay Plaintiff her actual damages, exemplary and punitive damages, and reasonable attorney's fees;

D.    Declaring that Defendants have committed conspiracy to deprive Plaintiff of her legal rights as set forth in the Eighth Cause of Action, and ordering Defendants, jointly and severally, to pay Plaintiff her actual damages, exemplary and punitive damages, and reasonable attorney's fees;

E.    Awarding Plaintiff quantum meruit of her services to Defendants as well as compensatory damages for Defendants' unjust enrichment;

F.    Awarding Plaintiff attorney's fess and costs in prosecuting this action;

G.    For such other and further relief as the Court deems just and proper.

Dated: New York, New York

December 16, 2010.

Yours, etc.

LAW OFFICE OF FELIX Q. VINLUAN

By: _____
Felix Q. Vinluan (FV6788)

450 Seventh Avenue, Suite 931
New York, NY 10123
Tel. No. 212-643-2692
Fax No. 212-643-3494
Email: fqvinluan@yahoo.com

*Attorneys for the Plaintiff*

## VERIFICATION

**STATE OF NEW YORK    )**
**COUNTY OF NEW YORK     ) S.S.**

    **I, JACQUELINE L. AGUIRRE,** of legal age and a resident of the state of New York, after having been sworn in accordance with law, hereby state that I am the plaintiff in the within Action/Complaint.   I have read the foregoing complaint and know the contents thereof.   The contents are true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                             **JACQUELINE L. AGUIRRE**

Subscribed to before me on this 16th day of December 16, 2010  in New York, New York.

FELIX Q. VINLUAN
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission Expires June 20, 2013