**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

JACQUELINE L. AGUIRRE,
         *Plaintiff,*

    -against-

BEST CARE AGENCY, INC.,
DOROTHY DE CASTRO and
PERLITA JORDAN,
         *Defendants.*

Docket No.: 10-cv-5914
(MKB-WDW)
**PLAINTIFF'S PROPOSED
JURY INSTRUCTIONS**

------------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiff Jacqueline L. Aguirre respectfully submits these requests to charge and proposed jury instructions regarding the essential elements of the claims she alleged and the damages that potentially stem from her claims.

Plaintiff respectfully reserves the right to submit additional instructions on any pertinent issue as the case proceeds and as the need arises.

## PRELIMINARY INSTRUCTIONS - CONTACT WITH OTHERS

Before we start the trial, let me give you a few "rules of the road".

First, please do not discuss the case with anyone. This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any Internet chat room, web site or other feature. If you have to tell someone such as your spouse or your employer that you are serving on a jury and that the trial may last a few days, that's okay. But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the Judge not to discuss the case. The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this

courtroom, and not on the basis of anything anyone who has not heard the evidence may think about the case. If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the Judge not to discuss the matter, and you should report the contact to the court as soon as possible.

Along the same lines, you should try not to access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the Internet. And in the unlikely event you see anything in the media about this case, please turn away and pay it no heed. Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations. The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.

## <u>ROLE OF THE COURT</u>

You have now heard all of the evidence in the case, as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be - or ought to be - it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

## ROLE OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you evaluate the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the parties have said in their opening statements, in their closing arguments, or in their questions, is not evidence. The objections by Plaintiff's and Defendants' attorneys also are not evidence, and you should not be influenced by any objection or by the Court's ruling on it. Nor is what I may have said at any point during the trial evidence. In this connection, you should bear in mind that a question put to a witness is never evidence. It is only the answer that is evidence. But you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Such answers are not evidence.

The rulings I have made during the trial are not an indication of my views as to what your decision should be. I also ask you to draw no inference from the fact that, upon occasion, I asked questions of certain witnesses. The questions were intended for clarification or to expedite

matters and were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

To determine the facts, you should take into consideration the story told by each witness, the manner in which he or she told it, the probability of its being true, and the interest of the witness, if any, in the results of the action. It is for you to say how far, if at all, a witness is to be believed.

It is the function of the jury, under proper instructions of the Court, to judge the credibility of the witnesses, to appraise their testimony, to weigh contradictory testimony and conflicting circumstances, and to draw the ultimate conclusions as to the facts.

As to the facts, ladies and gentlemen of the jury, you are the sole and exclusive arbiters. You are to perform the duty of finding the facts without bias or prejudice to any party.

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. If we both perform our functions properly, then the cause of justice will have been served in this case, whatever your verdict may be.

This charge will cover several subjects.

First, I will instruct you on certain principles of law which apply to all civil cases.

Second, I will instruct you on the law applicable to the particular claims in this case.

Finally, I will instruct you on additional general matters and the manner in which you are to conduct your deliberations.

You will receive a copy of these instructions to take with you into the jury room.

## GENERAL INSTRUCTIONS

### All Persons Equal Before the Law

This is a case brought by an individual, Jacqueline Aguirre, whom I will call the "Plaintiff". The action is brought against Best Care Agency, Inc. and Best Care Agency's owners, Dorothy De Castro and Perlita Jordan, whom I will call the "Defendants". Plaintiff worked for Defendants at all times relevant to this case. This case should be decided by you as an action between parties of equal standing in the community, of equal worth, and holding the same or similar stations in life. Plaintiff is not to be favored or disfavored because she is an individual, nor is Defendant Best Care to be favored or disfavored because of what it is. All parties are entitled to the same fair trial at your hands. They stand equal before the law, and are to be dealt with as equals in this Court.

### Burden of Proof: Preponderance of Evidence

This is a civil case, and as such, the Plaintiff has the burden of proving the material allegations of her Complaint by a preponderance of the evidence.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties -- that it is equally probable that one side is right as it is that the other side is right -- then

you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence -- she must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof, that what the party claims is more likely true than not true, then that element will have been proved by a preponderance of evidence.

Some of you may have heard of "proof beyond reasonable doubt", which is the proper standard of proof in a criminal case. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

<u>Evidence in the Case</u>

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and any factual stipulations or judicially-noticed facts. In determining the facts, you must rely upon your own recollection of the evidence. The evidence from which you are to decide what the facts are consists of:

1)      the sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness and whether the testimony is live or submitted in deposition form;

2)      the documents and exhibits received into evidence;

3)      any facts to which all the lawyers have agreed or "stipulated"; and;

4)      any fact which I have instructed you to accept as true.

By contrast, the questions of Plaintiff's or Defendants' attorneys are not evidence. At times, a question asked on cross-examination may have incorporated a statement which assumed

certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of the statement, and if there is no direct evidence in the record proving the assumed facts to be true, then you may not consider them to be true simply because it was contained in the question.

An example of this would be the following question about the weather:  "When did it stop raining?"  You would not be permitted to consider as true the assumed fact that it was raining, unless the witness herself had indicated it was raining, or unless there was some other evidence in the record that it was raining.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

Arguments by attorneys representing Plaintiff or Defendants are not evidence.  What Plaintiff's or Defendants' attorneys have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from their statements, it is your recollection which must govern.

Exhibits that have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the Court.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought out only to refresh a witness's recollection.

Finally, statements that I may have made concerning the evidence are not evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen that were admitted into evidence.

<u>Direct and Circumstantial Evidence</u>

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses -- something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is the exhibit's own present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came in to the courtroom this morning, the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Now you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts from which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all the evidence presented.

<u>Inferences</u>

During the trial, you have heard the attorneys use the term "inference" and in their arguments, they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from the facts, whether proved by direct or circumstantial evidence. The Plaintiff asks you to draw one set of inferences, while the Defendants ask to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from the facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

<u>Credibility of Witnesses</u>

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. It must also be obvious to you that both sides cannot be true and this is where you play your role as

jurors.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

In other words, in deciding credibility, you must try to evaluate a witness in light of his or her demeanor, the explanations given and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment and your own life experience.  Keep in mind that difficulty with English is not a sign that someone is not credible.  That someone speaks English as a second language should not affect how credible they seem to you.

<u>No Duty to Call All Witnesses</u>

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  At times, witnesses may be unavailable, especially if the events at issue occurred long ago and witnesses have moved away or changed jobs.  Nor does the law

require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

## Impeachment by Prior Inconsistent Statements

You have heard evidence that at some earlier time a witness has said or done something which counsel argues is inconsistent with the witness's testimony at trial.  Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability.  Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that the witness made an earlier statement that conflicts with this or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

## Undisputed Facts

As I told you at the beginning of this trial, in practically all cases there are certain fundamental facts about which there is no dispute, and which are agreed to by the parties.  You

are entitled simply to take them and use them as foundation from which you proceed to a consideration of the disputed facts. In this case, the undisputed facts are as follows:

1.     Plaintiff commenced this action against Defendants by the filing of the Complaint on December 20, 2010.

2.     Plaintiff came to the United States on March 26, 2000 with a B-2/tourist visa.

3.     Defendant Best Care Agency, Inc. is a nursing employment agency with address at 249-12 Jericho Turnpike, Suite 104, Floral Park, Nassau County, state of New York.

4.     Defendants Dorothy De Castro and Perlita Jordan are the owners and managers of Defendant Best Care.   Plaintiff approached Defendants and asked to be employed.

5.     On February 5, 2001, Defendant De Castro signed on behalf of Defendant Best Care the Form ETA 9035 (labor condition application) for the position of Accounting Consultant at an hourly rate of $19.00.  Said application was prepared by Neil Weinrib, Esq.

6.     Sometime in February 2001,  a Form I-129 (H-1B) petition was filed with the Legacy Immigration and Naturalization Service (INS), with Defendant Best Care as petitioner and with Plaintiff as beneficiary for the offered position of Accounting Consultant.

7.     Defendant De Castro signed the Form I-129 petition.

8.     In April 2001, the Legacy INS approved Best Care's Form I-129 petition with a validity period from April 26, 2001 to March 15, 2004.

9.     Defendants initially paid Plaintiff the amount of eight dollars ($8.00) per hour when she started working for the Defendants.

10.     On August 22, 2001, Counsel submitted to the U.S. Department of Labor Form ETA 750 Parts A and B, which was an application for alien employment certification, with the Plaintiff as the alien beneficiary.

11.     At that time, filing Form ETA 750 Parts A and B was the first step of the green card process.

12.     In March 2004, Defendant De Castro signed on behalf of Defendant Best Care a second Form I-129 (H-1B) petition on behalf of the Plaintiff.  The petition was for the position of Accounting Consultant at an hourly rate of twenty dollars ($20.00).    Said petition was prepared by Neil Weinrib, Esq.

13.     In June 2004, the U.S. Citizenship and Immigration Services (USCIS) approved Defendant Best Care's second H-1B petition on behalf of the Plaintiff, with a validity period from April 2004 to March 15, 2007.

14.     In June 2006, the U.S. Department of Labor required Defendant Best Care to notify the Labor Department if it was still interested in continuing the processing of Plaintiff's alien certification application (Form ETA 750).  Defendant later replied that it was.

15.     On February 27, 2007, Defendant De Castro signed a third Form I-129 petition (H-1B) on behalf of Defendant Best Care.  The beneficiary was the Plaintiff and the position offered was Accounting Consultant at an hourly wage rate of $22.57.

16.     In April 2007, the USCIS approved Best Care's third H-1B petition on behalf of the Plaintiff, with a validity period from March 2007 to April 25, 2008.

17.     On July 19, 2007, the U.S. Department of Labor approved Best Care's alien certification application (Form ETA 750) on Plaintiff's behalf for the position of Accounting Consultant at the offered wage rate of $29.26 per hour.

18.     On August 15, 2007, Defendant De Castro signed Form I-140 petition (immigrant petition for alien worker) on behalf of Defendant Best Care.  The beneficiary for the Form I-140 petition was the Plaintiff.

19.     Filing Form I-140 immigrant petition was the second step of the green card process.

20.     Plaintiff subsequently filed her Form I-485 (adjustment) application with the USCIS.

21.     Filing Form I-485 application was the third and final step of an employment-based green card process.

22.     On February 25, 2009, the USCIS sent Defendant Best Care a request to submit additional evidence to show its ability to pay Plaintiff the offered wage in connection with its Form I-140 immigrant petition.

23.     Defendants submitted Best Care's federal income tax returns and corporate bank statements to comply with the USCIS request for evidence.

24.     On April 14, 2009, the USCIS denied Best Care's Form I-140 immigrant petition.

25.     Defendants notified the immigration lawyer that they were not going to file an appeal from the decision of the USCIS denying Best Care's Form I-140 immigrant petition.

26.     The USCIS denied Plaintiff's Form I-485 adjustment application on May 28, 2009.

27.     Plaintiff left Defendants' employment on July 6, 2009.

28.     The U.S. Department of Homeland Security thereafter served Plaintiff a Notice to Appear (NTA), effectively putting her in removal (deportation) proceedings.

29.     On February 5, 2004, Defendants' accountant prepared Best Care's federal income tax return which showed a net loss of $62,244 for the year 2003.

30.     On February 11, 2005, Defendants' accountant prepared Best Care's federal income tax return which showed an ordinary business income of only $4,688 for the year 2004.

14

31.     On February 23, 2006, Defendants' accountant prepared Best Care's federal income tax return which showed an ordinary business income of only $32,321 for the year 2005.

32.     On February 16, 2007, Defendants' accountant prepared Best Care's federal income tax return which showed a net loss of $155,306 for the year 2006.

33.     On January 30, 2008, Defendants' accountant prepared Best Care's federal income tax return which showed a net loss of $528 for the year 2007.

34.     On February 4, 2009, Defendants' accountant prepared Best Care's federal income tax return which showed a net loss of $40,881 for the year 2008.

35.     The Form W-2s issued by Defendants to the Plaintiff showed that Plaintiff earned the following gross wage incomes for the following years:

| 2001 | - | $6,420 |
| 2002 | - | $15,984 |
| 2003 | - | $17,240 |
| 2004 | - | $17,612 |
| 2005 | - | $24,408 |
| 2006 | - | $23,499 |
| 2007 | - | $20,760 |
| 2008 | - | $21,297.50 |
| 2009 | - | $12,444.44 |

I will now instruct you as to the specific elements Plaintiff must prove with respect to her claims.

## SPECIFIC CHARGES

Plaintiff has asserted a number of claims based on statute and common law.  These claims against Defendants are claims for violations of federal human trafficking law, specifically sections 1589 and 1590 of Title 18 of the United States Code, a statute known as TVPRA, which is shorthand for its title, Trafficking Victims Protection Reauthorization Act.  Plaintiff likewise asserts claims for fraudulent inducement and negligent misrepresentation against the Defendants.

If you find that for any of these claims, Plaintiff has proven that claim by a preponderance of the evidence against the Defendants, your verdict should be for Plaintiff on that claim.  On the other hand, if Plaintiff has not carried her burden of proof with respect to one or more of her claims, your verdict should be for Defendants on that particular claim.

I will now explain to you what Plaintiff must prove to prevail on for each of her claims.

First, Plaintiff alleges that Defendants trafficked her with respect to forced labor. Second, Plaintiff alleges that Defendants trafficked her with respect to involuntary servitude.

<u>Claim One -- Trafficking with respect to Forced Labor</u>

I will now explain to you Plaintiff's first claim against the Defendants:  trafficking with respect to Forced Labor.  Keep in mind that Plaintiff does not claim Defendants violated the Forced Labor law.  As you will see, the definition of "forced labor" is relevant to whether you think Defendants are liable for trafficking with respect to forced labor.

The trafficking with respect to forced labor provision, 18 U.S.C. §1589 provides that:

"whoever knowingly provides or obtains the labor or services of a person --

    (1) by threats of serious harm to, or physical restrain against, that person or another person;
    (2) by means of any scheme, plan or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restrain, or;
    (3) by means of the abuse or threatened abuse of law or the legal process, ..."

shall be liable for "forced labor".    To find Defendants liable for trafficking with respect to forced labor, you must find that the Plaintiff has proven, by a preponderance of the evidence, three elements.  One, that the Defendants provided or obtained the labor or services of the Plaintiff.  Two, that the labor or services were provided or obtained by any of the three means or methods contemplated in the Forced Labor law.  And three, that Defendants acted knowingly.

I will now discuss these three elements.

The first element of "Forced Labor" is that a party "provided" or "obtained" the labor or services of the Plaintiff.

In considering the first element, the words "provide" and "obtain" are to be given their ordinary meaning. "Provide" means to make available or supply. "Obtain" means to gain or get.

The second element requires that the Plaintiffs' labor or services have been provided or obtained through any of the following means: (1) threats of serious harm to the Plaintiff or to any other person; (2) a scheme, plan or pattern intended to cause the Plaintiff to believe that failure to perform the labor or services would result in serious harm to her or to any other person; or (3) the abuse or threatened abuse of law or the legal process.

With the second element, the term "serious harm" includes both physical and non-physical harm, including psychological, financial or reputational harm. A threat of serious harm, therefore, need not involve any threat of physical violence. It could be a threat of any consequence, physical or nonphysical, considering all the circumstances, that would compel a reasonable person in a similar situation to perform or to continue performing labor or services in order to avoid incurring that harm. There need not be threats of overt physical coercion for there to be "serious harm". "Serious harm" may be in the form of "financial harm" as when a defendant's scheme caused the victim to believe that she might be deported and her family seriously harmed because she could no longer be able to send money. These financial threats constitute "serious harm". *United States v. Calimlim*, 583 F.3d 706 (7th Cir. 2008).

The words "scheme", "plan" and "pattern" are to be given their ordinary meanings. The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause the victim to

reasonably believe that she, her family, or any other person would suffer serious harm if she refused to continue providing labor or services.

"Abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. All persons have the right to report crimes and immigration violations to the authorities and to enforce their legal rights in a court of law. No one, however, may misuse the law or the legal system for purposes of extortion and/or unlawful pressure. If you find that a responsible party or parties contacted, or threatened to contact, police or immigration authorities, or that they otherwise used or threatened to use the legal system, and that the purpose was not to report crime or to enforce plaintiff's legal rights, but was instead to compel her labor or services, then you may find that a responsible party or parties abused - or threatened to abuse - the law or the legal process. Threatened abuse of legal process includes threats of deportation from the United States.

Under Trafficking with respect to Forced Labor, those are the three prohibited means that a person could have obtained or provided Plaintiff's labor or services. You need only find that one of these three occurred.

You should also ask whether the means used was sufficient to cause the Plaintiff to reasonably believe that she had no choice but to keep providing her labor or services. In making that determination, you may consider whether the Plaintiff's special vulnerabilities, if any, led her to believe that she had no choice but to work or to remain working for responsible party or parties. You may consider, for example, the Plaintiff's background, culture, physical and mental condition, experience, education, socioeconomic status and any inequalities between her and the

responsible party or parties with respect to these considerations, including their relative stations in life, among other things.  Simply put, you may ask whether the Plaintiff was vulnerable in some way so that the actions of the responsible party or parties, even if not sufficient to compel some other person to work, were enough to compel her to work.

You may consider not only overt threats that the responsible party or parties might have made to place Plaintiff in fear of suffering certain consequences.  You may also consider other surrounding circumstances, such as isolation from family and friends, poor working conditions, denial of rest days and medical care, giving Plaintiff little realistic opportunity to seek alternative work, withholding of pay, giving Plaintiff less than the required pay, misrepresentations as to future pay or assistance in immigration status, or any combination of these conditions, and any other techniques that the responsible party or parties might have used to intimidate Plaintiff and compel her to serve.

It is not significant that Plaintiff was not kept in a condition of forced labor by physical restraint -- such as the use of chains, barbed wire or locked doors.  The fact that the Plaintiff may have had an opportunity to escape her work premises is irrelevant if the responsible party or parties placed her in such fear of circumstances that she did not reasonably believe she could leave.  A victim who has been placed in such fear of circumstances is under no affirmative duty to try to leave her work premises.

It does not matter that the Plaintiff may have initially agreed, voluntarily, to render the service or to perform the work.  If a person willingly begins to work, but later desires to withdraw, and is then forced to remain and to perform work against her will, then her service becomes involuntary.

Finally, keep in mind that whether a person is paid a salary or a wage is not determinative of "forced labor".   If a person is compelled to labor against her will by any one of the three prohibited means, such service is involuntary, even if she is paid or compensated for her work.

The third or final element of "forced labor" is that the responsible party or parties acted knowingly.   A person acts knowingly if he or she acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness.   Whether a person acted knowingly may be proven by what he or she said and did and by all of the facts and circumstances surrounding the case, since rarely is direct proof of one's state of mind available.

Plaintiff likewise asserts, still under her claim for Trafficking with respect to Forced Labor, that Defendants are likewise liable under the second subsection of the statute.   18 U.S.C. §1589 (b) provides that:

> "whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services, by any of such means, ..."

shall likewise be liable for trafficking with respect to forced labor.

For you to find Defendants liable under the "benefits" section of the statute, you should ask whether any of the Defendants participated in a venture which engaged in the providing or obtaining of labor or services by any of the three means earlier discussed in subsection (a) of the statute.   Secondly, you should ask whether any of the Defendants knowingly benefited, whether financially or by receiving anything of value, from his or her participation in the venture of providing or obtaining Plaintiff's labor or services.   And thirdly, you must consider whether any of the Defendants knew or recklessly disregarded that the venture engaged in the providing or obtaining of labor or services by any of the three means discussed in subsection (a) of the statute.

## Claim Two:  Trafficking with respect to Involuntary Servitude

Plaintiff's second claim against the Defendants is Trafficking with respect to Involuntary Servitude.  The trafficking with respect to involuntary servitude provision, 18 U.S.C. §1590, provides that "whoever knowingly recruits, harbors, transports, provides, or obtains, by any means, any person for labor or services" in violation of Title 77 of 18 U.S.C. shall be liable.

Plaintiff's second claim encompasses a wider coverage of activities that may be committed by the responsible party or parties.  It covers not only "provides" and "obtains", which were covered under the Forced Labor provision, but also "recruits", "harbors" and "transports".  As with "provides" and "obtains", these words must be given their ordinary meanings.  "Recruit" generally means to seek the services of a person.  "Harbor" means to give or afford shelter or refuge to a person, either openly or secretly.  "Transport" means to transfer or convey from one place to another.

Further, the "means" by which the Plaintiff was recruited, harbored, transported, provided or obtained for her labor or services is not limited to the three means discussed in the first subsection of the statute.  The "means" under Trafficking with respect to Involuntary Servitude is "any" means.

The second element is that the recruiting, harboring, transporting, or providing of the Plaintiff through any means was in connection with forced labor.  It is not necessary to find that the Plaintiff was actually held in a condition of forced labor.

The third element of trafficking with respect to involuntary servitude is that the Defendants acted knowingly.   I remind you that "knowingly" means voluntarily and intentionally, and not because of ignorance, mistake, accident, or other innocent reason.

## Claim Three:  Fraudulent Inducement

Plaintiff's third claim is for Fraudulent Inducement. Plaintiff alleges that she was induced to work and/or to continue working for Defendants because of Defendants' fraudulent misrepresentations.

Plaintiff claims that she agreed to work for Defendants as a result of Defendants' promise to file her immigration sponsorship petition and to pay her the prevailing wage rate. She asserts that Defendant's promise of paying her the prevailing wage rate was fraudulent misrepresentation.

Plaintiff also alleges that Defendants' promise to her to work as an Accounting Consultant and to be properly compensated for such position led her to accept said position, She now claims that Defendants misrepresented to her the terms of her employment.

Plaintiff likewise claims that Defendant's representation to her that Defendant Best Care had the financial capability to pay her the offered wage rate in connection with her green card sponsorship and Defendants' promise that she would eventually be paid the prevailing wage rate upon her receipt of her green card induced her to remain in employment with the Defendants. She now asserts that these representations were fraudulent. Plaintiff alleges that Defendants concealed from her the fact that Defendant Best Care had been operating net losses for the years 2003, 2006 and 2007, and that it did not have sufficient net incomes to cover her offered wage rate for the years 2002, 2004 and 2005. She asserts that Defendants abused their position of trust as her immigration sponsor by misleading her as to the financial condition of Defendant Best Care. She claims that had she known of the true facts, she would not have continued working for the Defendants.

In this jurisdiction, for Plaintiff to prevail on her Fraudulent Inducement cause of action, you must find that she has proved with a preponderance of evidence that: (a) any of the

Defendants made a representation of material fact; (b) the representation was false; (c) Defendants knew that the representation was false when made; (d) justifiable reliance by the Plaintiff of the representation, and; (e) resulting injury to the Plaintiff. *See Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291 (2d Cir. 2006).

In fraudulent inducement cases in New York, "a misrepresentation of material fact, which is collateral to a contract [such as in an employment contract], and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud." *See WIT Holding Corp. v. Klein,* 282 A.D.2d 527, 528, 724 N.Y.S.2d 66 (2d Cir. 2001). Furthermore, a promise to take some future action which is collateral to the contract can be considered a "misrepresentation" for purposes of a fraud in the inducement cause of action. *See Deerfield Comms. Corp. v. Cheesebrough-Ponds, Inc.,* 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004, 510 N.Y.S.2d 88, 89 (1986) (holding that "a promise made with a preconceived and undisclosed intention of not performing it .... constitutes a misrepresentation" for purposes of a fraud in the inducement cause of action (quoting *Sabo v. Delman,* 3 N.Y.2d 155, 160, 143 N.E.2d 906, 908, 164 N.Y.S.2d 714, 716 (1957).

## Fourth Claim:  Negligent Misrepresentation

Under New York law, for Plaintiff to prevail on her claim for negligent misrepresentation, you must find that she has proved with a preponderance of evidence that:

> "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect;  (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose;  (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to her detriment." *Hydro Investors Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir. 2000).

A "special relationship" is akin to a fiduciary relationship, but need not rise to that same level. *See Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000).   Liability for negligent misrepresentation is imposed only on those "who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).   In determining whether justifiable reliance exists in a particular case, a fact finder should consider "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.*

## Damages:  Multiple Claims

I will now instruct you on awarding damages.

You should not award compensatory damages more than once for the same injury.  For example, if Plaintiff were to prevail on two claims, and establish a ten thousand dollar injury, you could not award her ten thousand dollar compensation on each claim.  She is entitled to be made whole again, not to recover more than she lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of her injuries.

## Compensatory Damages - Trafficking Act

If you find for the Plaintiff on either or both of the claims of trafficking with respect to forced labor or involuntary servitude, you may award Plaintiff compensatory damages.

The purpose of the law of compensatory damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the Defendants' violation of the

Plaintiff's rights.  If you find that the Defendants are liable on either or both of these claims, as I have explained them, then you must award the Plaintiff sufficient damages to compensate her for any injury proximately caused by the Defendants' conduct.

These are known as "compensatory damages".   Compensatory damages seek to make the Plaintiff whole -- that is, to compensate her for the damage she suffered.   Compensatory damages are not limited merely to expenses that Plaintiff may have borne.  A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that she has suffered because of a defendant's conduct.

I remind you that you may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by a Defendant's allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.   You should not award compensatory damages for speculative injuries, but only for those injuries that the Plaintiff has actually suffered, or which she is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require Plaintiff to prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

<u>Punitive Damages -- Trafficking Act</u>

If you find any of the Defendants guilty of trafficking with respect to forced labor or involuntary servitude, or both, you have the discretion to award, in addition to compensatory

damages, punitive damages.  You may award punitive damages if the Plaintiff proves by a preponderance of evidence that the Defendant's conduct was malicious and reckless, not merely unreasonable.  An act is malicious and reckless if it is done in such a manner and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others.  The purpose of punitive damages is to punish a Defendant for shocking conduct and to set an example in order to deter Defendants and others from committing similar acts in the future.

The awarding of punitive damages is within your discretion -- you are not required to award them.  If you decide to award punitive damages, you must use sound reason in setting the amount.  It must not reflect bias, prejudice, or sympathy toward any party.  But the amount may be large as you believe necessary to fulfill the purpose of punitive damages.  In this regard, you may consider the financial resources of the Defendants in fixing the amount of punitive damages.

Damages:  Fraudulent Inducement

If you find that Plaintiff failed to prove by a preponderance of evidence that Defendants engaged in  fraudulent inducement, then you will not consider the matter of damages.  But, if you find for the Plaintiff, you should award damages in an amount of money that the greater weight of the evidence shows fairly and adequately will compensate Plaintiff for her having relied to her detriment on Defendants' false representations regarding her being paid the prevailing wage rate for the offered position of Accounting Consultant.

Damages:  Negligent Misrepresentation

If you find that Plaintiff proved by a preponderance of evidence that Defendants committed negligent misrepresentations, not only with regard to their paying Plaintiff the prevailing wage rate but also with regard to the financial capability of Defendant Best Care

Agency to pay Plaintiff the offered wage rate in relation to her green card sponsorship, you should award Plaintiff damages in an amount of money that the greater weight of the evidence shows fairly and adequately will compensate Plaintiff for her having relied to her detriment on Defendants' false representations, which led to, among others, her having lost her immigration status and to her being put in removal or deportation proceedings.  If you find that Plaintiff failed to prove by preponderance of evidence that Defendants committed negligent misrepresentation, then you will not consider the matter of damages.

### RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portion of the testimony.

Your requests for exhibits or testimony -- in fact, any communication with the Court -- should be made in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### UNANIMOUS VERDICT

You will now return to decide the case.  In order to prevail, the Plaintiff must sustain her burden of proof as I have explained to you with respect to each element of the complaint.  If you find that the Plaintiff has succeeded, you should return a verdict in her favor on that claim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should

do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case, based upon your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

## SELECTION OF FOREPERSON

When you retire, you should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

## RETURN OF VERDICT

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## SPECIAL VERDICT

I have prepared a special verdict form for you to use in recording your decision.  The special verdict form is made up of questions concerning the important issues in this case.  These questions can be answered "yes" or "no".  Your answers must be unanimous and must reflect the conscientious judgment of each juror.

## **CONCLUSION**

As noted in the Preliminary Statement, Plaintiff respectfully submits the foregoing charges, and requests that the Court charge the jury in its usual terms as to general issues, even as Plaintiff seeks leave to submit additional or supplementary requests if warranted by developments prior to and during trial.

Dated: Woodside, New York.
      May 23, 2014.

Respectfully submitted,

_____
/s/ Felix Q. Vinluan (FV6788)
Law Office of Felix Q. Vinluan
69-10 Roosevelt Avenue, 2nd Floor
Woodside, NY 11377
Phone: (718) 478-4488
Fax:  (718) 478-4588

_____
Gabriel M. De La Merced
Law Office of Gabriel M. De La Merced
65 Broadway, Suite 820
New York, NY 10006
Tel. No. 212-791-7621
Fax No. 212-791-7625

*Counsels for the Plaintiff*

29